# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARIAH LEE COLLIER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:08-0400** |
| **v.** | ) | **Judge Trauger / Knowles** |
| | ) | |
| **AUSTIN PEAY STATE UNIVERSITY,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

This matter is before the Court upon a Motion to Dismiss filed by Defendants Austin

Peay State University, Tennessee Board of Regents, Richard Jackson, "Dr. Hoppe," "Chief

Biles," Dennie Burke, Phil Bredesen, and Timothy Hall, in their official capacities (hereinafter

"State Defendants").  Docket No. 50.  State Defendants have contemporaneously filed a

Memorandum of Law.  Docket No. 51.

Plaintiff has filed an "Answer to the Requested of Dismisal [*sic*] from the State Request

for Case Management Meeting" (Docket No. 63), and an "Objection to Request for Dismisal

[*sic*] and Summary Judgment of All Defendants" (Docket No. 76), which the Court will will

construe as Responses to the State Defendants' Motion.

For the reasons to be discussed below, the undersigned will recommend that the State

Defendants' Motion to Dismiss be GRANTED.  After discussing the Motion to Dismiss, the

1

undersigned will review Plaintiff's claims against the remaining Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B).

On April 21, 2008, Plaintiff, acting pro se, filed a 9-page Complaint, with 18 pages of attachments, against 21 Defendants. Docket No. 1. The following day, April 22, 2008, Plaintiff filed an "Amended Complaint" against 20 Defendants. Docket No. 3. Plaintiff's Amended Complaint eliminated two Defendants that had been named in her original Complaint: "New Channel 5," and "Sentinel News." Docket Nos. 1, 3. The Amended Complaint also added the "Tennessee Board of Regents" as a Defendant. *Id.* Because the filing of an Amended Complaint supersedes the original Complaint (s*ee, e.g., Boelens v. Redman Homes, Inc*., 759 F.2d 504, 508 (5th Cir. 1985); *Fritz v. Standard Sec. Life Ins. Co. of N.Y.,* 676 F.2d 1356, 1358 (11th Cir. 1982)), the Court will focus on the allegations of the Amended Complaint.[1] The Court will , however, consider the attachments to the original Complaint, even though they were not attached to the Amended Complaint.

To say that Plaintiff's Amended Complaint is difficult to understand would be a gross understatement. Plaintiff stated the following "grounds" for filing this action in federal court:

> I am not sure but I think Civil Rights Act of 1964, 1991 with the Americans with Disability Act of 1990 Libel, Slander, Negligence, Harassment, Malicious Prosecution, After notice of action was given T.C.A. 29-24-103; 29-24-104; 35-15-1001; 39-13-603 and 1[st], 4[th], 5[th], 6[th], 7[th], 9[th], 14th Amendment, to include 42 U.S.C.A. 1983 purpose of civil rights statute is to provide protect of persons against misuse of power and the public interest with the right to be free from discrimination Ramirez vs. Fox Television stations Inc 998 F 2d and Liability of Quinoes vs City of Evanston Ill., 58 F. 3d 275 and the discussion of patterns of discrimination and reporting

---

[1] Except for the dropping and adding of Defendants, Plaintiff's Amended Complaint is substantially similar to her original Complaint.

2

> by the news media and Beauharnais vs Illinois where the court
> concluded that libelous utterances are not within the area of
> constitutionally protected speech. The failure to provide
> congressional given power by law oversight in the investigation of
> complaints mandated by the United States congress in the
> enforcement of rule and regulation under the United States
> Department of Justice. Continued to use the Web site served no
> public interest if there was no threat timely removal from the
> internet. No release to uses my picture or likeness without prior
> consent no laws were violated. The released of personal
> information that was not public record. I have no violent history
> and did not commit a criminal act. Venue

Docket No. 3, p. 2.

As best the Court can tell, Plaintiff's Amended Complaint centers around two incidents.

First, Plaintiff avers that Defendant Austin Peay State University (hereinafter sometimes referred

to as "APSU") "failed to grant my Master Degree after a violation of my rights under 504 and

failed to release proof of my failure of a test." Docket No. 3, p. 4. Plaintiff avers, "This is

against federal regulation under the family education act." *Id.* Plaintiff does not further

identify "504," nor does she give a citation to the "family education act," nor does she state

when this alleged violation occurred.

Second, most of Plaintiff's Amended Complaint relates to one or more telephone calls

Plaintiff placed to "local media and government offices," an "Emergency Campus Advisory"

("ECA") issued by APSU, and ensuing events. The Amended Complaint does not explain these

matters in detail, and, in order to be understood, its allegations must be viewed in light of the

attachments to the original Complaint. Unfortunately, neither the original Complaint nor the

Amended Complaint refers to the attachments or explains exactly how they fit with the

allegations of the Amended Complaint, thereby leaving the Court to sort through these matters as

best it can.

3

The ECA, which apparently was issued on April 20, 2007, stated in part as follows:

> In compliance with the "Timely Notice" provisions of the Jeanne
> Clery disclosure of campus Security Policy and Campus Crime
> Statistics Act of 1998 – and out of an abundance of caution –
> Austin Peay State University issues this advisory to the campus
> community:
>
> > Yesterday, April 19, APSU officials learned that
> > Ms. Mariah Collier, a disgruntled former student,
> > had telephoned local media and government offices
> > and made statements to the effect that, if she were
> > an angrier, violent person, something bad
> > (comparable to the Virginia Tech tragedy) could
> > happen at APSU.
> >
> > Because of prior threatening statements, Ms. Collier
> > had been directed that she must obtain our approval
> > prior to visiting the university's campus and that
> > she would be accompanied at all times by campus
> > police personnel.
> >
> > While yesterday's calls were placed from a Florida
> > number and Ms. Collier lists a Florida home
> > address, the university received information today
> > that indicates that she may be in the mid-state area.
> > Therefore, as a precaution for our students, faculty
> > and staff, we are providing this 2002 photo of Ms.
> > Collier (the most current image available to the
> > [*sic*].[2]

Docket No. 1, p. 11 (footnote added).

Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the fact that, on April 16,

2007, twenty-three people were shot to death on the campus of Virginia Tech University in

---

[2] With her original Complaint, Plaintiff submitted a copy of the APSU web-page setting
forth the ECA. Docket No. 1, p. 11. The web-page Plaintiff submitted states, "Page 1 of 2," but
Plaintiff did not submit the second web-page. Thus, the ECA abruptly ends. The Court has
attempted to retrieve the missing web-page from the Internet by using the URL that appears on
the ECA, but the Court has been unable to do so.

Blacksburg, Virginia, by a student who then took his own life. *See*

*http://www.msnbc.msn.com/id/18134671/*, accessed February 19, 2009. Plaintiff's calls to "local

media and government offices" occurred three days later, on April 19, 2007.

A number of media outlets around the state posted Internet stories about the ECA.

Docket No. 1, p. 10-20. One such story, on the Web site "www.allstate.com," stated that the

ECA had been "sent out April 20, by [Defendant] Richard Jackson, Vice President for Legal

Affairs and Strategic Planning." Docket No. 16. That same story identified APSU Police Chief

Lantz Biles and Executive Director of Public Relations for APSU, Dennie Burke, both of whom

are named as Defendants, along with "All State."

The "facts" set forth in the Amended Complaint include the following allegations:

> I had deep feeling concerning the issues and how Austin Peay
> University handled many cases of students with disabilities.
> Austin Peay State University has a contract with the federal
> government Ft. Campbell combined with a student campus on Ft
> Campbell which involves our troops who sometimes come home
> disabled. I am the wife of a 100% disabled veteran. I was not
> upset over a ban from the campus which was a lie. Virginia Tech
> University is special because the student was disabled. The ways
> in which many schools handle disabled students aggravate the
> situation by non-compliance to federal laws. To include not
> providing necessary help to the student. This is what occurred in
> my case. Isolation and failure to monitor a student with mental
> illness and notify a family member of a problem and not limited to
> court action is a failure to keep the general public safe.
>
> Austin Peay State University had been requested to take me to
> court if they felt that I had violated the law by threatening violence
> on their campus. They refused. I felt that we are a nation of laws
> and that due process was not given to me as it had been for the
> white students Austin Peay State University claimed they had
> prosecuted in the past. Austin Peay claimed that they had
> prosecuted white students in answering the United States
> complaint I filed. This was an attempt to evade prosecution
> through administrative processes. However, that student is not on

5

any website or newspaper article that remains on APSU campus. Facing your accusers is a constitutional right. Due process is also a constitutional right. I have requested these rights as a part of a protected class of people.

I called the Clarksville Leaf Chronicle and expressed my concern about Virginia Tech and how Austin Peay handled my case. They were ineffective and violated many of the Department of Education Regulations and federal law. . . .

These persons knew I had a hearing problem due to my disability but they also know I was bi-Polar. Due to my disability I talk loud. However, I never threatened the school. The school never acted reasonable nor did the Clarksville's Leaf Chronicle. Prior knowledge of a person's actions and voice ones make this case an act of violation of privacy, negligent, with omissions and commission due to the release of the picture with the full knowledge that I had not threatened the school. . . .

Slander and libel and defamation of character are what these news stations helped Austin Peay University to perpetuate. Austin Peay's motives are clear with the statement which followed the event. The fact that other students which are of another color and sex has not been treated as I, brings us to my color and gender. I do feel that it was due to my color, disability and gender that I was singled out by Austin Peay State University to be treated in this manner. It was also a way to retaliate against me for filing and writing public figures and filing a claim with the United States Department of Education. Therefore, I assert that the new media acted as an agent of APSU.

In an attempt to cover up the states wrongs Austin Peay conspired with the news media to defame my character. The Governor's office was one of the offices mentioned in the news article. The governor's office had prior knowledge of my tone of voice due to phone calls to them in the past. It was widely known that I was hearing impaired.

The news paper had a duty not to take my words out of context. They had a duty to call to make sure that the story was given from both sides. . . . The Ban from campus is an issue of under the color of law. The denial of Freedom of movement and access Austin Peay State University rent its building to the public. I am public. Due process must occur. The United States Department of

6

Education failed to provide leadership and direction to facilitate equal protection under the law. . . .

This situation is due to the Governor's failure to provide guidance and supervision to the all departments in his charge. The Tennessee Board of Regents is in his charge. . . .

The Governor has a duty to protect the weakest citizen and to provide leadership and to resolve issues of safety. If this school continues to think that a person is a threat to its students the elimination of such threats needs to occur. (resolutions of the problem) re-testing or showing the test scores and the test requested with the grid would be a solution. To allow the school to continue to say that a student is a threat and restrict that student from campus is not a solution. The solution lies within the meeting of the minds and caring enough about persons with disabilities to treat them with dignity and too ensure that the Laws of the United States are followed.

Docket No. 3.

Plaintiff seeks financial compensation, proof that she failed her final exam, written apologies, a story published about her that she approves, a new police department policy regarding "persons with disabilities before issuing an alert," an injunction preventing harassment, a section addressing veterans' disability issues published "at least once a month" in all of Gannet Media's outlets, new legal counsel for the Tennessee Board of Regents, and requiring candidates for hire to be part of an open public meeting wherein they "discuss their position on 504, The Disability Act, Family Education Act, Due Process and Security as it pertains to persons with disabilities and Trespass policies [*sic*] changes for persons with disabilities who might have the need to request the assistance of the Board of Regents." *Id.*

State Defendants filed the instant Motion and accompanying Memorandum on July 10, 2008. Docket Nos. 50 and 51. State Defendants argue that Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

7

relief can be granted. *Id.* Specifically, State Defendants argue that: (1) Plaintiff has failed to state a claim upon which relief can be granted with regard to her alleged violation of Title VII because Plaintiff was not an employee of any State Defendant, and also because she failed to exhaust her administrative remedies by not filing an EEOC Charge of Discrimination; (2) the Eleventh Amendment bars this Court's jurisdiction over Plaintiff's pendent state law claims because the State has not waived its Eleventh Amendment immunity from suits under Title I of the ADA; (3) Plaintiff cannot assert a direct cause of action against these Defendants under the United States Constitution, so to the extent Plaintiff asserts violations of her Constitutional rights, she must pursue those violations pursuant to 42 U.S.C. § 1983; (4) Plaintiff has failed to state a claim upon which relief may be granted with regard to her alleged violation of 42 U.S.C. § 1983 because she has not shown that she was deprived of any Constitutionally protected right; and (5) Plaintiff's claims under 42 U.S.C. § 1983 are barred by the applicable statutes of limitations. Docket No. 51.

Plaintiff has submitted two documents that could be construed as responses to the State Defendants' Motion to Dismiss: (1) a document headed in part "Answer to the Requested of Dismissal from the State" (Docket No. 63), and (2) a document headed "Request for Injunctive Relief Against the All State & Objection to Request for Dismissal and Summary Judgment of all Defentants" (Docket No. 76). Once again, much of what Plaintiff discusses in these documents is extremely difficult to understand or to relate to the allegations of the Amended Complaint. As best the Court can tell, Plaintiff makes the following arguments: (1) TCA §§ 29-20-101 and 29-20-205 remove immunity for injury proximately caused by a negligent act or omission of any employee within the scope of her employment; (2) she is both an employee and employer of the

8

State of Tennessee; (3) Plaintiff filed her Complaint as soon as she learned that an alert had been issued (which was approximately thirty (30) days after the alert had been issued), and the statute of limitations should run from when she learned that an alert had been issued because she does not live in Tennessee, so she did not actually see the alert on the news or read about it in the newspaper; (4) the State issues should be heard in Federal Court because she does not reside in Tennessee, but the State actors do; and (5) the school and the media had reason to know their allegations were untrue at the time of printing and issuing the alert, yet they ran it anyway, did not take it down when requested to do so, and did not issue a retraction once they acknowledged that Plaintiff did not pose a threat. Docket No. 63.

Plaintiff's second response appears to confirm that Plaintiff wishes to sue certain Defendants for "slander and libel and defamation of character." Docket No. 76, p. 2. Plaintiff also states:

> This whole situation was brought on by the out right fabrication by APSU. To continue stating that Mariah Collier made threats in 2002 and not back the statements up with documents is a discredit to the public, the news media serve. The public trust is at issue here in this case. To keep this story on the Internet is void of public trust.

*Id*., p. 4.

Plaintiff further responds that she was not treated with fairness, dignity, and respect. *Id.*, p. 5. Plaintiff also argues that Defendant APSU "continues to ignore and violate" a Consent Decree entered in *Geier, et al., v. Sundquist, et al.,* No. 5077, United States District Court for the Middle District of Tennessee. While Plaintiff has submitted an unsigned, undated copy of that Consent Decree, Plaintiff does not explain the specifics of this claim, or how it relates to the allegations of the Amended Complaint.

9

## III.   Analysis

### A.  Standard of Review:  Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  *Id.*  A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient.  *Bell Atlantic Corp. V. Twombly*, 127 S.Ct. 1955, 1965 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face."  *Id.* at 1965, 1974.  *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

### B.  The Case at Bar

Plaintiff alleges that her rights have been violated under the Civil Rights Act of 1964 ("Title VII"), the Americans With Disability Act ("ADA"), and 42 U.S.C.A. § 1983, as well as her rights under First, Fourth, Fifth, Sixth, Seventh, Ninth, and Fourteenth Amendments.  She also asserts claims of libel, slander, negligence, harassment, malicious prosecution, and violations of T.C.A. §§ 29-24-103, 29-24-104, 35-15-2001, 39-13-603.  Docket Entry No. 3.

#### 1.  General Matters

Initially, the Court notes that most of the State Defendants are not even mentioned in the body of the Amended Complaint.  There are simply no factual allegations pertaining to Dr.

10

Hoppe, Chief Biles, Dennie Burke, or Timothy Hall. While Chief Biles and Dennie Burke are mentioned in one of the attachments to Plaintiff's Complaint (Docket No. 1, p. 16-17), nothing set forth in that attachment states a claim upon which relief could be granted against Chief Biles or Dennie Burke. Thus, Plaintiff's claims against these Defendants should be dismissed.

While Defendant Phil Bredesen is not mentioned by name in the body of the Complaint, there are certain allegations with regard to "the Governor," but these are conclusory allegations, not factual allegations.[3] These allegations fail to state a claim upon which relief can be granted as to Governor Phil Bredesen.

Defendant Tennessee Board of Regents is mentioned once in the Amended Complaint, *viz*., "The Tennessee Board of Regents is in [the Governor's] charge." Docket No. 3, p. 7. This allegation fails to state a claim upon which relief can be granted as to the Tennessee Board of Regents.

Furthermore, Plaintiff's Amended Complaint consists primarily of "conclusory allegations or legal conclusions masquerading as factual allegations," which are insufficient to state a claim upon which relief can be granted. Those facts presented by Plaintiff that are not "conclusory allegations or legal conclusions masquerading as factual allegations" fail to state any claim upon which relief can be granted.

### 2. Title VII Claim

With regard to her Title VII claim, that statute applies solely to discrimination in

---

[3] The Amended Complaint refers to the Governor's "failure to provide guidance and supervision to the all departments in his charge," and that the Governor "has a duty to protect the weakest citizen and to provide leadership and to resolve issues of safety." The Court further notes that liability under § 1983 cannot be predicated upon the doctrine of respondeat superior. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978).

11

employment. *See* 42. U.S.C. § 2000e-2(a). Accordingly, the existence of an employer/employee relationship is a necessary prerequisite for sustaining a Title VII claim.

Plaintiff avers that she was both an employer and employee of the State. Docket Entry No. 63. Specifically, Plaintiff avers that, as a taxpayer, she is an employer of State workers, including the Attorney General's office and APSU, and that, as a citizen who abides by State signs requesting that she pick up paper, keep the state clean, not litter, and report crime, she has been employed by the State. *Id.* Plaintiff avers that she is paid for her employment in State services. *Id.*

Despite Plaintiff's responsive averments that an employer/employee relationship exists between herself and the State Defendants, Plaintiff's Complaint and Amended Complaint are predicated upon the fact that she was a graduate student at Austin Peay who was denied a Master's Degree because she reportedly failed her final exam and whose access to campus was reportedly restricted following an incident. Plaintiff does not claim any discrimination pertaining to employment. Accordingly, Plaintiff cannot demonstrate that she was employed by State Defendants.

Even if Plaintiff could demonstrate that she had been employed by State Defendants, the record does not contain any Charge of Discrimination Plaintiff filed with the EEOC or any EEOC Notice of Right to Sue issued to Plaintiff. Without these two documents, Plaintiff cannot demonstrate that she exhausted her administrative remedies, which is a prerequisite to filing a Title VII action in federal court. *See, e.g., Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Because Plaintiff cannot demonstrate the existence of an employer/employee relationship

12

between herself and State Defendants, and because Plaintiff cannot show that she has exhausted her administrative remedies, this claim fails.

### 3. ADA Claims

The nature of Plaintiff's claims under the ADA is very unclear. While the State Defendants argue that Plaintiff's ADA claim is barred by the doctrine of sovereign immunity, that argument addresses only Title I of the ADA. Docket No. 51, p. 4-6. There is, however, a more fundamental reason why any claims Plaintiff attempts to raise under Title I of the ADA must fail. Title I of the ADA, like Title VII discussed above, prohibits only employment-related discrimination. 42 U.S.C. § 12112(a). Thus, Plaintiff has no claim under Title I of the ADA against State Defendants because, as discussed above, she was not employed by any of them.

It may be that Plaintiff attempts to raise a claim under Title II of the ADA, which provides in relevant part as follows:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participating in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

On September 25, 2008, Congress passed the "ADA Amendments Act of 2008," which became effective January 1, 2009. Pub. L. No. 110-235, 122 Stat. 3553 (2008). The Sixth Circuit, in a case involving the ADA Amendments, has recently recognized the proposition that a court should apply "the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Jenkins v. National Board of Medical Examiners*, No. 08-5371, U.S. Court of Appeals for the

13

Sixth Circuit, decided February 11, 2009, Slip Opinion, p. 3, *quoting Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711 (1974).

The ADA amendments do not directly amend § 12132 quoted above. The Amendments do, however, alter the definition of the term disability, as follows:

As used in this Act:

(1) Disability. – The term "disability" means, with respect to an individual –

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as handling such an impairment (as described in paragraph (3)).

(2) Major life activities. –

(A) IN GENERAL. – For purposes of paragraph (1), major life activities include, but are not limited to, caring for ones self, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

(B) MAJOR BODILY FUNCTIONS. – For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

. . .

(4) RULES OF CONSTRUCTION REGARDING THE DEFINITION OF DISABILITY. – The definition of "disability" in

14

paragraph (1) shall be construed in accordance with the following:

> (A) The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act.

> (B) The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

To the extent that Plaintiff seeks to assert an ADA Title II claim with regard to Defendants' alleged denial of her Master's Degree, that claim is barred by the statute of limitations. The Court takes judicial notice of the filings in *Mariah Collier v. Austin Peay State University, et al.,* No. 3:03-0407, U. S. District Court for the Middle District of Tennessee. Plaintiff Mariah Collier filed her Complaint in that action on May 8, 2003. The Complaint, *inter alia*, made a claim under the Americans With Disabilities Act alleging that "she has been effectively blocked by the acts of the Defendants from completing her first master's degree in Health and Human Performance since May 2002." The Complaint further averred that Plaintiff Mariah Collier was anticipating receiving her master's degree in May 2002, until she received a "non-passing grade" in one of her courses. That case was dismissed on January 4, 2004, pursuant to a stipulation of dismissal (without prejudice) filed by the parties.

The Sixth Circuit has recognized that the statute of limitations for Tennessee ADA cases is one year. *Williams v. Trevecca Nazarene College*, 1989 U.S. App. LEXIS 20546 (6th Cir. 1998). The *Williams* Court stated:

> The ADA has no statute of limitations, and most closely-analogous Tennessee statute gives [Plaintiff] a year to commence suit. *See Del Costello v. Teamsters, 461 U.S. 151, 158-59, 76 L. Ed. 2d 476, 103 S.Ct. 281 (1983)* (directing courts to look to analgous state statute when federal statute is silent on limitations);

15

> 10 Code Ann. § 28-3-104 (giving a year to file civil rights cases).
> The Tennessee statute begins the running of the statute of
> limitations once the cause of action accrues.

1989 U.S. App. LEXIS 20546 at *3.

It is apparent that Plaintiff's claims with regard to the denial of her Master's Degree

arose in 2001 or 2002.[4]  As discussed above, the instant action was filed on April 21, 2008.  Any

claims Plaintiff might have asserted under the ADA with regard to this issue, therefore, are

barred by the statute of limitations.

To the extent that Plaintiff seeks to assert a claim under Title II of the ADA with regard

to the ECA-related events, Plaintiff has failed to state a claim upon which relief can be granted.

Plaintiff has alleged, in conclusory fashion, that she has a "disability."  Plaintiff, however, has

not described the nature of that disability (beyond simply stating that she had a hearing problem

and was "bi-Polar"), nor has she alleged that any disability she might have substantially limits

one or more major life activities, nor has she alleged that she is a "qualified individual with a

disability," which is defined in 42 U.S.C. § 12131(2) as:

> *An individual with a disability who*, with or without reasonable
> modifications to rules, policies, or practices, the removal of
> architectural, communication, or transportation barriers, or the
> provision of auxiliary aides and services, *meets the essential
> eligibility requirements for the receipt of services or the
> participation in programs or activities provided by a public entity*.

(Emphasis added.)

Plaintiff's claims with regard to the ECA have nothing to do with meeting "the essential

---

[4]  Plaintiff does not specify, in her Amended Complaint, when the incident involving her
Master's Degree occurred.  In another filing, however, Plaintiff states "[The issue] is not about
2002 and the lost [*sic*] of the degree . . . ."  Docket No. 63, p. 5.

16

eligibility requirement for the receipt of services or the participation in programs or activities provided by a public entity." She cannot, therefore, establish that she is a "qualified individual with a disability."

Thus, Plaintiff has failed to state a claim under the ADA.

### 4. Constitutional Claims

Plaintiff alleges violations of her First, Fourth, Fifth, Sixth, Seventh, Ninth, and Fourteenth Amendment rights, in and of themselves, and also pursuant to 42 U.S.C. § 1983. *See* Docket Entry No. 1. Plaintiff, however, cannot bring a direct cause of action for alleged violations of her Constitutional rights; instead, Plaintiff must raise such claims under 42 U.S.C. § 1983. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735 (1989); *Thomas v. Shipka,* 818 F.2d 496, 500 (6th Cir. 1987), *vacated on other grounds*, 488 U.S. 1036 (1989).

### 5. Section 1983 Claims

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331(1986)); *Flagg Bros., Inc. v. Brooks,* 436

17

U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

For the reasons discussed above, any § 1983 claims Plaintiff attempts to raise with regard to the denial of her Master's Degree in 2002 are barred by the statute of limitations.

With regard to Plaintiff's alleged violations of her First, Fourth, Fifth, Sixth, Seventh, Ninth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, Plaintiff fails to state a claim upon which relief can be granted. The First Amendment protects, *inter alia*, freedom of speech and freedom of the press. Plaintiff argues that the comments expressed by her to the *Leaf Chronicle* (that may have been interpreted as possible threats) were protected speech, and that by issuing a campus-wide alert, Defendants retaliated against her. Docket Entry No. 1, pp. 5-6.

In order to demonstrate that she was retaliated against for exercising her First Amendment rights, Plaintiff must establish that she engaged in protected conduct, that an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct, and that there was a causal connection between her protected conduct and her adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). The initial inquiry, then, is whether Plaintiff's statement to the *Leaf Chronicle* was protected conduct. Threats of violence do not fall within the parameters of constitutionally protected speech under the First Amendment, because of the Government's interest in protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 388

18

(1992).

If the speech at issue was not a threat, the question becomes whether the speech was a matter of public concern. *See Rankin v. McPherson*, 483 U.S. 378 (1987). Statements are not considered in a vacuum; rather, the manner, time, place, and context in which the statement was made are considered as well. *Id.* The Supreme Court has held that speech addressing a matter of public concern is speech relating to "any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Generally, speech involves matters of public concern when it involves "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg v. Hous. Auth. of Irvine,* 253 F.3d 891, 898 (6th Cir. 2001), *quoting McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983). In retaliation claims, speech that involves matters of public concern is typically protected, while speech that pertains primarily to matters of a personal interest is unprotected. *Connick*, 461 U.S. at 147. In the case at bar, Plaintiff telephoned the *Leaf Chronicle* to express her "concern about Virginia Tech and how Austin Peay had handled [her] case." Docket Entry No. 1, p. 5. Because Plaintiff's speech pertained primarily to matters of a personal interest, it was unprotected. Because Plaintiff's speech was unprotected, she cannot establish the first requisite element of her claim.

The Fourth Amendment protects against unreasonable searches and seizures and warrants not based upon probable cause. Although Plaintiff alleges that State Defendants violated her Fourth Amendment rights, Plaintiff fails to allege that she was subject to any search or that anything of hers was seized. Because Plaintiff has not minimally alleged facts that could give rise to a claim under the Fourth Amendment, Plaintiff's claim fails.

19

The Fifth Amendment provides for due process of law and just compensation for private property taken for public use. Plaintiff avers that her due process rights were violated because Austin Peay "refused" to take her to court for threatening violence on their campus, when Austin Peay had allegedly claimed that they had prosecuted white students for the same thing in the past. Plaintiff specifically complains that in refusing to prosecute her, she was denied a chance to "face [her] accuser," which is a Constitutional right. Plaintiff's allegations are conclusory. Plaintiff fails to cite any authority for the proposition that a refusal to prosecute deprives one of due process or confrontation rights. Accordingly, this claim fails.

The Sixth Amendment provides, *inter alia*, that defendants in criminal prosecutions have the right to counsel and have the right to a speedy and public trial by an impartial jury of their peers in the State and district wherein the crime was committed. Because the Sixth Amendment pertains to criminal prosecutions and this is a civil matter, Plaintiff cannot state a claim under the Sixth Amendment.

The Seventh Amendment preserves the right to a trial by jury in all cases where the value in controversy exceeds twenty dollars. Plaintiff seeks an amount in excess of twenty dollars, and she has made a jury demand in this case. Plaintiff has not alleged any facts to demonstrate that her right to a trial by jury has been impeded or somehow otherwise violated.

The Ninth Amendment provides that the rights enumerated in the Constitution do not deny or disparage other rights retained by the people. Plaintiff does not allege any facts that pertain to this Amendment, much less allege facts that demonstrate that her Ninth Amendment rights were somehow violated.

The Fourteenth Amendment states in relevant part:

20

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Plaintiff has not set forth any facts that would constitute the deprivation of life, liberty or property without due process of law, nor has she set forth any facts to show that she was denied the equal protection of the laws. *See, e.g. Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985); *Board of Regents v. Roth*, 408 U.S. 564 (1972).

To the extent that Plaintiff seeks to raise § 1983 claims based upon theories of libel, slander, negligence, and harassment, those claims must fail because they do not involve the violation of rights secured by the Constitution and laws of the United States. *See Paul v. Davis,* 424 U.S. 693 (1976) (defamation claim not cognizable under § 1983); *Wyatt v. Ruck Construction, Inc.,* 117 Ariz. 186, 571 P.2d 683, 688 (Ariz. Ct. App. 1977) (mere tortuous conduct, including defamation, does not constitute a violation of § 1983); *Beishir v. Schanzmeyer*, 315 F. Supp. 519 (D. Mo. 1969) (simple negligence that does not involve violation of any civil right is not actionable under § 1983). While Plaintiff might theoretically raise a § 1983 claim with regard to malicious prosecution (*see Albright v. Oliver*, 510 U.S. 266 (1994)), she has not alleged that she was ever prosecuted at all, much less maliciously.

Likewise, Plaintiff's claims related to T.C.A. §§ 29-24-103, 29-24-104, 35-15-1001, and 39-13-603 are not cognizable in a § 1983 action.

### 6.  State Law Claims

With respect to Plaintiff's pendent state law claims, she apparently attempts to assert state law claims against the State Defendants for libel, slander, negligence, harassment and

malicious prosecution, as well as claims under T.C.A. §§ 29-24-103, 29-24-104, 35-15-2001, and 39-13-603. Because the undersigned recommends that all Plaintiff's federal claims be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims against the State Defendants, and those state law claims should be DISMISSED WITHOUT PREJUDICE.  *See, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

## IV.  Frivolity Review

Section 1915(e)(2)(B) of Title 28 U.S.C. provides in relevant part as follows:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
> 
> . . .
> 
> (B) The action or appeal –
> 
> > (i)  is frivolous or malicious;
> > (ii) fails to state a claim upon which relief may be granted . . . .

The standards for determining whether a plaintiff has stated a claim upon which relief may be granted have been discussed above.  *See* p. 10, *supra.*

In addition to the State Defendants, Plaintiff has also named, in her Amended Complaint, the following Defendants: The Leaf Chronicle, ALL STATE, Stephaine Coward (Official Capacity and Individual Capacity), ASSICATED PRESS, Clarksville Police Department, Gannett, WATE 6,[5] WVLT, TENNESSEAN, Christian Bottofrff (official Capacity and

---

[5]  Plaintiff subsequently voluntarily dismissed her claims against WATE 6 without prejudice.  Docket Nos. 40, 41.

Individual Capacity), and the United States Department of Education. Docket No. 3.

Even though they are listed as Defendants in the style of the Amended Complaint, neither the body of Plaintiff's Amended Complaint, nor the attachments to the original Complaint, mentions Defendants Stephanie Coward or Christian Bottofrff. Thus, Plaintiff has failed to state a claim upon which relief may be granted as to these Defendants, and Plaintiff's claims against them should be dismissed.

Plaintiff also identified the Clarksville Police Department as a Defendant in the style of her Amended Complaint, and she subsequently amended her Amended Complaint in order to add the City of Clarksville as a Defendant. Docket Nos. 29, 36, 43. This amendment, however, did not include any additional factual allegations, beyond those stated in the Amended Complaint. The only allegation in the Amended Complaint regarding these Defendants is, "Clarksville Police Department sent Florida Police to my home in Florida." Docket No. 3, p. 5. Immediately following this statement is the statement, "The Police Department requested information which was granted with an untrue statement that I had threatened Austin Peay State University." *Id.,* p. 6. It is unclear whether the "Police Department" referred to in the second sentence is the Clarksville Police Department or the Florida Police. Even assuming that the term "Police Department" refers to the Clarksville Police Department, these allegations fail to state a claim upon which relief can be granted against the Clarksville Police Department. The Clarksville Police Department is not a separate entity and it is not capable of suing or being sued. *Legleu v. Clarksville Department of Electricity*, 944 S.W.2d 364 (Tenn. Ct. App. 1995). Additionally, this allegation fails to state a claim upon which relief can be granted as to the City of Clarksville.

The only allegations in the body of the Amended Complaint regarding the Department of

Education are as follows:

> However, the United States Department of Education said there
> was nothing they could do because of the timeliness of the
> Complaint.

Docket No. 1, p. 4.

> I called the Clarksville Leaf Chronicle and expressed my concern
> about Virginia Tech and how Austin Peay had handled my case.
> They were ineffective and violated many of the Department of
> Education Regulations and federal law.

Id., p. 5.

> The fact that other students which are of another color and sex has
> not been treated as I, brings us to my color and gender I do feel
> that it was due to my color, disability and gender that I was singled
> out by Austin Peay State University to be treated in this manner. It
> was also a way to retaliate against me for filing and writing public
> figures and filing a clam with the United States Department of
> Education.

*Id.,* p. 6-7.

> The United States Department of Education failed to provide
> leadership and direction to facilitate equal protection under the
> law.

*Id.,* p. 7.

These conclusory allegations do not state any cognizable legal claims against the United

States Department of Education.

Finally, Plaintiff has stated no cognizable claims arising under federal law with regard to

Defendants The Leaf Chronicle, ALL STATE, Associated Press, Gannett, WVLT, or the

TENNESSEAN. The Plaintiff has not averred that any of these Defendants acted under color of

state law and, therefore, they cannot be liable under § 1983. Any claims Plaintiff might have

against these Defendants would necessarily be state law claims, which should be dismissed upon

Case 3:08-cv-00400   Document 86   Filed 02/20/09   Page 24 of 25 PageID #: 553

the dismissal of Plaintiff's federal law claims.

### V.  Conclusion

For the foregoing reasons, the undersigned recommends that: (1) the State Defendants' Motion to Dismiss (Docket No. 50) be GRANTED; (2) Plaintiffs' claims brought under federal law against all remaining Defendants be DISMISSED; and (3) Plaintiff's state law claims against all Defendants be DISMISSED WITHOUT PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have ten (10) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON  KNOWLES
United States Magistrate Judge

Case 3:08-cv-00400   Document 86   Filed 02/20/09   Page 25 of 25 PageID #: 554